**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

United States of America

v.

George Graham,

Defendant–Petitioner

Case No. 17-CR-663

**NOTICE OF MOTION TO VACATE GUILTY PLEA AND CONVICTION**

**PURSUANT TO 28 U.S.C. § 2255, THE SIXTH AMENDMENT,**

**AND RULE 4(b) OF THE RULES GOVERNING § 2255 PROCEEDINGS**

PLEASE TAKE NOTICE that upon the annexed Memorandum of Law, the sworn

declaration of George Graham, and all prior proceedings in this case, Petitioner George

Graham, proceeding pro se, hereby moves this Court pursuant to 28 U.S.C. § 2255, the

Sixth Amendment to the United States Constitution, Padilla v. Kentucky, 559 U.S. 356

(2010), Strickland v. Washington, 466 U.S. 668 (1984), and Rule 4(b) of the Rules

Governing Section 2255 Proceedings, for an Order granting the following relief:

1.  Vacating Petitioner's guilty plea and conviction on the ground that the plea was not

knowing, intelligent, or voluntary due to constitutionally ineffective assistance of

counsel, including counsel's failure to advise Petitioner that his guilty plea would result

in mandatory deportation and counsel's affirmative misrepresentations regarding immigration consequences;

2.   Alternatively, ordering an evidentiary hearing pursuant to 28 U.S.C. § 2255(b) to resolve disputed issues of material fact concerning counsel's advice, representations, and omissions related to immigration consequences, cooperation, and deportation;

3.   Applying equitable tolling to the one-year limitations period under 28 U.S.C. § 2255(f) due to extraordinary circumstances caused by counsel's affirmative misadvice, Petitioner's subsequent incarceration and deportation, and Petitioner's reasonable diligence upon discovery of the constitutional violation; and

4.   Granting such other and further relief as this Court deems just and proper.

Dated: January 15, 2026

Respectfully submitted,

s/ George Graham

George Graham, Pro Se

TABLE OF CONTENTS

I. INTRODUCTION
.................................................................................................... 1-2

II. LEGAL STANDARD
.................................................................................................. 2-4

III. PROCEDURAL HISTORY
........................................................................................... 4-5

IV. PETITIONER'S BACKGROUND AND STRONG EQUITIES
......................................... 5-7

V. FALSE ICE HOLD AND MISREPRESENTATIONS AT THE OUTSET OF THE CASE
...... 7-8

VI. FAILURE TO ADVISE OF MANDATORY DEPORTATION (PADILLA VIOLATION)
........ 8-9

VII. COOPERATION, 5K1 LETTER, AND EXPECTATION OF COMMUNITY RELEASE
........ 9-10

VIII. VIABLE DEFENSE AND RATIONAL DECISION TO GO TO TRIAL
................................ 10-11

IX. HEALTH CONDITIONS AND COMPASSIONATE RELEASE
......................................... 11

X. UNEXPECTED ICE DETENTION AND DEPORTATION
................................................... 11-12

XI. TIMELINESS AND EQUITABLE TOLLING
................................................................. 12-16

    A. Extraordinary Circumstances Prevented Timely Filing
............................................. 12

    B. Petitioner Could Not Have Discovered His Claim Earlier
......................................... 13

    C. Petitioner Acted with Reasonable Diligence Upon Discovery
................................ 14

D. Summary
............................................................................................ 16

XII. STRICKLAND ANALYSIS
........................................................................... 16-20

  A. Deficient Performance
............................................................................ 16-19

  B. Prejudice
...........................................................................................19-20

XIII. REQUEST FOR EVIDENTIARY HEARING
................................................................. 21

XIV. CONCLUSION AND PRAYER FOR RELIEF
................................................................. 21

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

United States of America

v.

George Graham,

Defendant–Petitioner

Case No. 17-CR-663

RECEIVED
SDNY PRO SE OFFICE
2026 JAN 23  AM 10: 48

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO VACATE GUILTY PLEA AND CONVICTION PURSUANT TO 28 U.S.C. § 2255

Petitioner George Graham, proceeding pro se, respectfully moves this Court pursuant to 28 U.S.C. § 2255 to vacate his guilty plea and conviction on the ground that his Sixth Amendment right to the effective assistance of counsel was violated. Defense counsel Bradley Henry failed to advise Petitioner that his guilty plea would result in mandatory deportation, affirmatively misrepresented the existence of an ICE detainer, and induced Petitioner's plea through false assurances of release, cooperation benefits, and immigration protection, in violation of Padilla v. Kentucky, 559 U.S. 356 (2010), and Strickland v. Washington, 466 U.S. 668 (1984).

## I. INTRODUCTION

1. Petitioner George Graham respectfully moves this Court to vacate his guilty plea under Padilla v. Kentucky, 559 U.S. 356 (2010), and Strickland v. Washington, 466 U.S. 668 (1984), for ineffective assistance of counsel.

2. Petitioner asserts that his former counsel, Bradley Henry, misadvised him regarding the immigration consequences of his plea and provided false information about an ICE hold, which directly influenced his decision to plead guilty.

3. Bradley Henry further represented that Adam Hobson, U.S. Attorney, had written a letter to ICE in 2017 in support of an S/U visa for Petitioner and also a supplemental letter to ICE in 2019.

4. Petitioner reasonably relied on these representations to secure release and resolve the criminal case, but counsel never advised him that pleading guilty would trigger mandatory deportation.

## II. LEGAL STANDARD

5. Under 28 U.S.C. § 2255, a federal conviction must be vacated where it was obtained in violation of the Constitution or laws of the United States. A guilty plea is constitutionally valid only if it is knowing, intelligent, and voluntary. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

6. Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984), which requires a showing that:

(a) counsel's performance was constitutionally deficient, and

(b) the deficient performance prejudiced the defendant.

7. Where a defendant challenges a guilty plea based on ineffective assistance, the prejudice inquiry focuses on whether there is a reasonable probability that, but for counsel's errors, the defendant would have rejected the plea and proceeded to trial. Hill, 474 U.S. at 59.

8. When the ineffective assistance involves immigration consequences, counsel has a constitutional duty to provide accurate advice regarding the risk of deportation. The Supreme Court holds that failure to advise a noncitizen that a guilty plea will result in mandatory deportation constitutes deficient performance under Padilla v. Kentucky, 559 U.S. 356 (2010). The defense counsel has an affirmative constitutional duty whenever the immigration consequences of plea are "clear" that pleading guilty will result in deportation.

9. The Second Circuit has consistently applied Padilla, emphasizing that counsel's failure to research or advise on clear immigration consequences constitutes deficient performance. Kovacs v. United States, 744 F.3d 44, 52–54 (2d Cir. 2014). Affirmative misrepresentations regarding immigration consequences are particularly serious and satisfy the deficient-performance prong.

10. Prejudice is established where deportation is the determinative factor in the defendant's decision to plead guilty. Lee v. United States, 582 U.S. 357, 367–68 (2017), Hill, 474 U.S. at 59. Even if the likelihood of acquittal at trial is uncertain, a reasonable

probability that the defendant would have gone to trial if properly advised is sufficient to satisfy Strickland's prejudice requirement.

## III. PROCEDURAL HISTORY

11. Petitioner was arrested in or about 2017 and charged in this case.

12. Following release, all discussions with Bradley Henry focused solely on the criminal case.

13. Petitioner was never consulted about deportation, nor informed that pleading guilty could trigger mandatory deportation.

14. Petitioner was represented throughout the criminal proceedings by Bradley Henry, Esq.

15. Petitioner was advised by Bradley Henry that by pleading guilty and cooperating, he would pursue potential immigration relief, including the possibility of an S or U visa, and would coordinate with Adam Hobson, U.S. Attorney, and Petitioner's immigration counsel, Spar & Bernstein.

16. Petitioner ultimately entered a guilty plea.

17. Petitioner is aware that several conferences occurred between Bradley Henry and Spar & Bernstein regarding his potential S or U visa.

18. Despite these conferences, Bradley Henry never informed Petitioner that pleading guilty would trigger mandatory deportation, and Petitioner reasonably relied on counsel's assurances to secure release and resolve the criminal case.

19. At no point prior to entering the plea was Petitioner advised that the charged offense constituted an aggravated felony or otherwise triggered mandatory deportation.

20. Petitioner only pled guilty because he was not informed that his plea would trigger mandatory deportation.

21. Had he been properly advised, he would have proceeded to trial, even if it risked a longer jail sentence.

22. Petitioner was later incarcerated, taken into ICE custody, and deported.

23. This § 2255 motion challenges the validity of the plea itself, not merely the sentence imposed.

## IV. PETITIONER'S BACKGROUND AND STRONG EQUITIES

24. Petitioner has lived in the United States for 35 years since the age of four.

25. He has never lived in any other country.

26. At all relevant times, Petitioner was a lawful permanent resident of the United States.

27. From approximately 2010 until his arrest in 2017, Petitioner served as a youth mentor with the YMCA and volunteered as a football and basketball coach for a local

youth league. These roles were an important part of his life and reflected his long-standing ties to his community in the United States.

28. At the time Petitioner was also pursuing a lawful professional career in music and had secured a recording contract with Atlantic Music Group. He was anticipating the release of new music and continued work in the United States, which further reinforced his belief that his future would remain in the United States.

29. Petitioner obtained a master's degree in Business Administration and Psychology.

30. He was fully employed and a taxpaying member of society.

31. Petitioner was a full-time member of Christ Our Loving Shepherd Church.

32. Petitioner is the father of five children, all United States citizens.

33. Two of his children are twins he shares with his wife.

34. Three of his children are from a prior relationship.

35. Petitioner also cared for his elderly mother, who became a widow following the death of Petitioner's father in November 2017, prior to Petitioner's guilty plea. His support and presence were critical to her well-being during this period.

36. Since deportation in 2020, Petitioner has been separated from his family.

37. His wife has been forced to raise their twins alone, resulting in severe financial, emotional, and psychological hardship.

38. Petitioner's entire family resides in the United States.

39. Petitioner does not speak the language of the country to which he was deported.

40. He has no family, no support network, and no meaningful access to medical or mental-health care there.

41. Petitioner now suffers from PTSD and severe anxiety, which due to severe financial hardship unable to receive proper treatment since deportation.

## IV. FALSE ICE HOLD AND MISREPRESENTATIONS AT THE OUTSET OF THE CASE

42. At the time of his arrest in 2017, Petitioner sought bail so he could fight his case from home.

43. Defense counsel Bradley Henry told Petitioner that the arrest triggered an ICE hold, which prevented him from being granted bail.

44. Counsel never verified the existence of this ICE hold.

45. Counsel later admitted that he relied solely on what the U.S. Attorney Adam Hobson told him.

46. Petitioner understood the alleged ICE hold only as a temporary custody issue affecting bail due to counsel's misadvice.

47. Neither counsel nor anyone else ever suggested that the ICE hold meant Petitioner would be deported.

48. In fact, no ICE hold existed at that time yet Petitioner was induced to plead guilty under that false assumption.

49. This false representation materially influenced Petitioner's understanding of his legal posture and options.

## V. FAILURE TO ADVISE OF MANDATORY DEPORTATION (PADILLA VIOLATION)

50. Under Padilla v. Kentucky, when immigration consequences are clear, counsel has an affirmative duty to advise the defendant accurately.

51. The immigration consequences in this case were clear, direct, and mandatory.

52. Defense counsel never advised Petitioner that pleading guilty would result in mandatory deportation.

53. Counsel never explained immigration statutes, removal proceedings, or aggravated felony consequences.

54. Counsel never warned Petitioner that cooperation cannot override mandatory deportation.

55. Counsel never advised Petitioner that lawful permanent resident status offered no protection.

56. Instead, counsel affirmatively represented that immigration issues were being handled by himself and AUSA Adam Hobson.

57. Counsel told Petitioner that he would receive no additional incarceration.

8

58. Counsel told Petitioner he would be released back into the community.

59. Counsel told Petitioner he would be supervised by a parole officer for approximately three years.

60. Petitioner was even provided the name (by Bradley Henry) of a parole officer while incarcerated, reinforcing the belief that deportation was not contemplated.

61. These representations were materially false.

## VI. COOPERATION, 5K1 LETTER, AND EXPECTATION OF COMMUNITY RELEASE

62. Counsel advised Petitioner that cooperation was necessary.

63. Counsel advised the Petitioner that the government would issue a 5K1 letter in recognition of his cooperation.

64. Counsel misrepresented cooperation outcomes, including the S/U visa and 5K1 letter.

65. Counsel advised that such cooperation would assist in securing immigration benefits.

66. Petitioner did cooperate with authorities.

67. Petitioner did receive a 5K1 letter.

68. This further reinforced Petitioner's understanding that:      a. He would be released,

b. He would return to the community, and

c. Deportation was not a consequence of the plea.

69. Counsel informed Petitioner in 2019 while incarcerated that AUSA Adam Hobson would write a supplemental letter to ICE in support of S/U visa.

70.    At no time did AUSA Adam Hobson advise Petitioner or immigration counsel that deportation was mandatory.

71.    To the contrary, all conduct by the parties reflected an expectation that Petitioner would remain in the United States.

## VII. VIABLE DEFENSE AND RATIONAL DECISION TO GO TO TRIAL

72. Petitioner consistently maintained that the charges against him were not true.

73. He wished to proceed to trial.

74. Trial was a rational and viable option.

75. A close friend of Petitioner named Jerome Floyd, who also assisted Bradley Henry with working with Spar and Bernstein, referred Bradley Henry to the Petitioner was represented by the same attorney, Bradley Henry, on similar charges.

76. That friend went to trial and won, resulting in dismissal/acquittal.

77. This fact strongly influenced Petitioner's belief that trial was viable.

78. Had Petitioner been properly advised of mandatory deportation, he would have rejected the plea and gone to trial, even at the risk of a longer sentence.

79. No rational person in Petitioner's position would have accepted a plea resulting in permanent banishment had the truth been disclosed.

## VIII. HEALTH CONDITIONS AND COMPASSIONATE RELEASE

80. Prior to pleading guilty, Petitioner informed counsel that he suffers from lupus.

81. Petitioner explained that continued treatment with his rheumatologist, Dr. Lans in New York, was medically necessary and potentially life-saving.

82. During incarceration in 2020, Petitioner's condition worsened during the COVID-19 pandemic.

83. Defense counsel sought compassionate release on medical grounds.

84. AUSA Adam Hobson did not oppose the motion.

85. The Court granted compassionate release so Petitioner could seek medical care.

86. This further reinforced that all parties expected Petitioner to return to the community—not be deported.

## IX. UNEXPECTED ICE DETENTION AND DEPORTATION

87. On the day of compassionate release, Petitioner was not released to the community.

88. He was immediately taken into ICE custody without warning.

89. He was detained in a facility with known COVID-19 cases.

90. He was given incorrect medication, causing him to lose consciousness.

91. Petitioner was hospitalized.

92. His family was denied visitation.

93. He was later placed in solitary confinement with no phone access.

94. He could not contact his family or counsel.

95. Shortly thereafter, Petitioner was deported.

96. Defense counsel ceased responding to Petitioner and Petitioner's family entirely.

## X. TIMELINESS AND EQUITABLE TOLLING

97. Petitioner acknowledges that this motion is filed outside the ordinary one-year limitations period. However, equitable tolling applies because (1) extraordinary circumstances beyond Petitioner's control prevented timely filing, and (2) Petitioner acted with reasonable diligence once he discovered the factual and legal basis for his claim. Holland v. Florida, 560 U.S. 631, 649 (2010).

### A. Extraordinary Circumstances Prevented Timely Filing

98. Petitioner was affirmatively misled by his defense counsel, Bradley Henry, regarding the immigration consequences of his guilty plea. Counsel falsely advised Petitioner that he had an ICE hold at the time of his arrest in 2017, which Petitioner understood only to affect his ability to obtain bail—not to place him at risk of deportation. Counsel later

admitted that he never independently verified the existence of any ICE hold and relied solely on representations allegedly made by the U.S. Attorney.

99. At no point did counsel advise Petitioner that pleading guilty would trigger mandatory deportation, nor did counsel explain that deportation was a certain and automatic consequence of the charged offense. To the contrary, counsel affirmatively represented that immigration issues were being handled through cooperation with the government, including assurances that a letter had been written to ICE in support of immigration relief and that cooperation would result in a 5K1 letter and potential S or U visa. Petitioner in fact received the 5K1 letter, reinforcing his belief that immigration relief—not removal—was the anticipated outcome.

100. These representations reasonably caused Petitioner to believe that deportation was not a risk and that no immigration challenge was necessary. Courts have consistently held that affirmative misadvice and misleading assurances by counsel constitute extraordinary circumstances justifying equitable tolling.

**B. Petitioner Could Not Have Discovered His Claim Earlier**

101. Petitioner had no reason to investigate or suspect a Padilla violation at the time of his plea because he was expressly told the opposite of the truth: that immigration consequences were being addressed and that cooperation would protect him. Petitioner was a lawful permanent resident at the time and had never been advised that his plea would automatically result in removal regardless of cooperation.

102. Counsel Bradley Henry has consistently refused to cooperate since Petitioner was granted compassionate release, even recently, and fails to respond to any inquiries from Petitioner or his family. Petitioner only later became aware of immigration enforcement actions against him and, still later, due to a case brought against Petitioner in June 2025 by the government triggered Petitioner to conduct independent legal research, discovered that, his attorney had a constitutional obligation under Padilla v. Kentucky to advise him of mandatory deportation consequences. This was the first point at which Petitioner understood that his plea may have been constitutionally invalid.

103. Lack of knowledge alone is not the basis for tolling here; rather, tolling is warranted because Petitioner's lack of knowledge was directly caused by counsel's misrepresentations and omissions.

**C. Petitioner Acted with Reasonable Diligence Upon Discovery**

104. After discovering the factual and legal basis for his Padilla claim, Petitioner promptly sought assistance from appointed counsel under the Criminal Justice Act for the purpose of filing a motion under 28 U.S.C. § 2255. Petitioner expressly requested that such a motion be filed. Appointed counsel declined to file any such motion and refused to submit a § 2255 motion asserting Petitioner's Padilla claim. While counsel remained appointed, Petitioner lacked the practical ability to file independently. Counsel was subsequently removed. Petitioner did not knowingly or voluntarily waive his right to counsel during this period. Once left to proceed pro se, Petitioner acted promptly and filed the present motion as soon as practicable.

14

105. In further demonstration of reasonable diligence, Petitioner informed the Court during proceedings in this same criminal case in or about June 2025 that he wished to pursue relief under 28 U.S.C. § 2255. At that time, Petitioner was attempting to obtain assistance in filing such a motion and did not abandon his claim. However, due to the continued involvement and subsequent removal of appointed counsel, and Petitioner's lack of meaningful access to United States legal resources following deportation, no filing occurred at that time. Once Petitioner was left to proceed pro se and understood the constitutional basis of his Padilla claim, he acted promptly and filed the present motion without further delay.

106. Equitable tolling does not require maximum diligence or legal sophistication; it requires reasonable diligence under the circumstances. Given Petitioner's reliance on counsel, subsequent incarceration, deportation, and lack of access to United States legal resources, his actions satisfy that standard.

107. Petitioner's motion is timely under principles of equitable tolling because extraordinary circumstances—namely, affirmative misrepresentations and omissions by defense counsel regarding the immigration consequences of the guilty plea—prevented Petitioner from filing earlier, and Petitioner acted with reasonable diligence once those circumstances ceased. Defense counsel repeatedly assured Petitioner that immigration consequences were being addressed through cooperation with the government and affirmatively failed to advise that the plea would result in mandatory deportation. These assurances were reinforced by the government's conduct, including the issuance of a §

5K1 letter and the grant of compassionate release, all of which reasonably confirmed Petitioner's understanding that deportation was not a consequence of the plea. As a result of counsel's misrepresentations, Petitioner had no reason to suspect that his plea was constitutionally infirm. Following his deportation, Petitioner remained cut off from meaningful access to United States legal resources and continued to rely on counsel's prior representations. Once Petitioner discovered that counsel had been constitutionally obligated to advise him of mandatory deportation and that such advice was never given, he acted promptly to pursue relief. Under Holland v. Florida, 560 U.S. 631 (2010), these facts establish both extraordinary circumstances and reasonable diligence, warranting equitable tolling of the limitations period.

### D. Summary

108. Because Petitioner was affirmatively misled by counsel, lacked any reasonable basis to discover the Padilla violation earlier, and acted diligently once he did, equitable tolling applies. Denial of this motion on timeliness grounds would improperly punish Petitioner for relying on constitutionally deficient legal advice and would undermine the protections established by Padilla and Strickland.

### XI. STRICKLAND ANALYSIS

#### A. Deficient Performance

109. The Second Circuit has repeatedly held that affirmative misrepresentations regarding immigration consequences are constitutionally deficient. United States v. Couto, 311 F.3d 179, 188 (2d Cir. 2002); Kovacs v. United States, 744 F.3d 44, 52–53 (2d Cir. 2014).

110. Defense counsel's performance fell well below an objective standard of reasonableness under prevailing professional norms because counsel failed to advise Petitioner that his guilty plea would result in mandatory deportation as a matter of law. Where the immigration consequence of a plea is clear and automatic, counsel has an affirmative constitutional duty to provide correct advice. Counsel's complete failure to do so constituted deficient performance under Padilla v. Kentucky, 559 U.S. 356 (2010).

111. Counsel further rendered ineffective assistance by falsely representing to Petitioner that he was subject to an ICE hold at the time of his arrest. Counsel conveyed this representation as fact, despite never independently verifying whether any detainer existed, and later acknowledged that he relied solely on representations attributed to the U.S. Attorney. This misrepresentation materially distorted Petitioner's understanding of his custody status and legal options. The Second Circuit has made clear that counsel's failure to research clear immigration consequences, or to consult competent immigration authorities, independently constitutes deficient performance. Kovacs, 744 F.3d at 54.

112. Counsel compounded these errors by assuring Petitioner that pleading guilty would result in no additional incarceration, creating the false impression that the plea carried minimal consequences beyond those already faced.

113. Counsel additionally promised Petitioner that he would be released back into the community and subjected only to parole supervision for approximately three years. Counsel's provision of the name of a parole officer further reinforced this assurance and conveyed that post-plea release—not removal—was the expected outcome.

114. Prior to obtaining bail while incarcerated during his initial arrest in 2017, Petitioner expressly asked defense counsel Bradley Henry whether pleading guilty and cooperating with the government would result in his deportation. Counsel affirmatively responded that Petitioner would not be deported and represented that, in exchange for pleading guilty and cooperating, Petitioner would receive a U.S.S.G. § 5K1.1 letter, which counsel advised would enable Petitioner to obtain immigration relief in the form of an S or U visa. Counsel did not qualify this advice, did not warn Petitioner that deportation was mandatory, and did not advise that such immigration relief was legally unavailable in light of the charged offense. Petitioner reasonably relied on this affirmative representation in deciding to plead guilty. This advice was materially false and constituted affirmative misrepresentation regarding clear immigration consequences, rendering counsel's performance constitutionally deficient under Padilla v. Kentucky, 559 U.S. 356 (2010).

115. Counsel failed to conduct any meaningful investigation into the immigration consequences of the charged offense or the proposed plea, despite knowing that Petitioner was a lawful permanent resident and that remaining in the United States was of paramount importance to him. Counsel neither consulted competent immigration authorities nor researched whether the offense constituted an aggravated felony triggering mandatory removal.

116. Rather than providing accurate advice, counsel affirmatively misled Petitioner by representing that immigration consequences were being addressed through cooperation with the government and that potential relief—including an S or U visa—would be

pursued. Counsel's assurances led Petitioner to believe that cooperation could override or mitigate any immigration consequences, despite the legal impossibility of such relief in the face of mandatory deportation.

117. In addition to failing to advise Petitioner that his guilty plea triggered mandatory deportation, counsel affirmatively minimized immigration consequences through anecdotal assurances. Specifically, counsel reassured Petitioner by citing examples of other clients who had pled guilty to more serious charges yet were not deported. These representations conveyed that deportation was discretionary, unlikely, or avoidable in Petitioner's case, and reasonably led Petitioner to believe that immigration consequences would not occur. Such anecdotal assurances constitute affirmative misadvice under Padilla and further reinforced counsel's deficient performance, directly influencing Petitioner's decision to plead guilty.

**B. Prejudice**

118. As a direct and proximate result of counsel's constitutionally deficient performance, Petitioner lost his family, access to necessary medical care, livelihood, and home. Petitioner was separated from his U.S. citizen elderly mother, brother, sister, nephews and nieces, wife and U.S. citizen children, including children with mental-health needs, and deprived of the ability to participate in their daily care, emotional support, and upbringing. He also lost access to consistent medical treatment for serious chronic conditions, including lupus, which had been continuously managed in the United States by established physicians and could not be adequately treated following deportation.

119. Petitioner was permanently banished from the only country he has ever known. He has lived in the United States since early childhood, has no meaningful ties to the country of removal, does not speak the language, and has no family, community, or support network there. Deportation imposed a consequence far more severe than the criminal sentence itself—amounting to permanent exile from his home, culture, medical care, and entire family.

120. Had Petitioner been properly advised that his guilty plea would result in mandatory deportation as a matter of law, he would have rationally rejected the plea and insisted on going to trial, even if doing so carried the risk of a longer custodial sentence. Preserving his ability to remain in the United States with his family, maintain access to life-sustaining medical care, and continue his lifelong residence was the determinative factor in his decision-making. Under Lee v. United States, 582 U.S. 357 (2017), a defendant establishes prejudice where "the determinative issue" is avoiding deportation, even when the likelihood of success at trial is uncertain.

121. Prejudice is clear and overwhelming. Counsel's failures deprived Petitioner of the ability to make a knowing, intelligent, and voluntary decision regarding his plea and resulted in consequences that were severe, permanent, and uniquely devastating. There is a reasonable probability that, but for counsel's ineffective assistance, Petitioner would not have pled guilty and would have proceeded to trial, satisfying the prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984), and independently establishing prejudice under Padilla v. Kentucky, 559 U.S. 356 (2010), as applied in Lee.

## XII. REQUEST FOR EVIDENTIARY HEARING

122. A district court must grant an evidentiary hearing unless the motion and record conclusively show that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b). Here, the sworn affidavits and undisputed factual allegations establish a clear Padilla violation and fulfill both prongs of the *Strickland* standard. The Court may vacate the plea on the existing record. Alternatively, at minimum, an evidentiary hearing is required to resolve disputed issues concerning counsel's advice and representations.

## XIII. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Petitioner George Graham respectfully requests that this Court:

a. Vacate Petitioner's guilty plea and conviction on the existing record, as the motion, sworn affidavits, and documentary evidence establish that Petitioner's Sixth Amendment right to the effective assistance of counsel was violated, thereby restoring Petitioner to the position he would have occupied had he been properly advised of the mandatory immigration consequences of his plea; and

b. In the alternative, should the Court determine that any material factual disputes exist, order an evidentiary hearing pursuant to 28 U.S.C. § 2255 to resolve issues concerning counsel's advice, representations, and omissions under Padilla v. Kentucky and Strickland v. Washington; and

c. Grant such other and further relief as this Court deems just and proper.

Dated: January 15,  2026

New York, New York

Respectfully submitted,

_____

George Graham

Pro Se

4140 Carpenter Ave 2D

Bronx NY 10466

9149047647

GGRAY4140@gmail.com

**AFFIDAVIT OF GEORGE GRAHAM**

I, George Graham, pursuant to 28 U.S.C. § 1746 declare under penalty of perjury as follows:

1. I am the defendant and petitioner in this matter.

2. I have lived in the United States for 35 years since I was four years old.

3. I have never lived anywhere else or left the United States since arriving at age four.

4. I obtained a master's degree in Business Administration and Psychology from Bridgeport University.

5. I have five children, all United States citizens, two with my current wife, Amanda Graham, and three from a previous relationship.

6. At all relevant times, I was employed, a taxpayer, and a full-time member of Christ Our Loving Shepherd Church.

7. I suffer from lupus, and continued treatment with my rheumatologist, Dr. Lans, is medically necessary. I also suffer from PTSD and severe anxiety.

8. From approximately 2010 until my arrest in 2017, I served as a youth mentor with the YMCA and volunteered as a football and basketball coach for Mount Vernon Razorbacks, which is a youth league. These roles were an important part of my life and reflected my long-standing ties to my community in the United States.

9. At the time I was also pursuing a lawful professional career in music and had secured a recording contract with Atlantic Music Group. I was anticipating the release of new music and continued work in the United States, which further reinforced my belief that my future would remain in the United States.

1

10. At the time of my arrest in 2017, I was a lawful permanent resident.

11. My attorney, Bradley Henry, told me that I had an ICE hold, which I understood
    only to mean that I could not obtain bail and therefore could not fight my criminal
    case from home.

12. I made it clear to Bradley Henry several times that staying in the United States
    was the most important thing to me.

13. Deportation was unacceptable to me.

14. I did not believe then, and was never told, that I faced deportation as a result of
    my charges or a guilty plea by Bradley Henry.

15. My attorney admitted he never independently verified the ICE hold, but relied
    solely on the representation of the U.S. Attorney, Adam Hobson.

16. After being released on bail, my attorney and I spoke only about my criminal
    case. Deportation was never discussed.

17. My attorney never advised me that pleading guilty would result in mandatory
    deportation.

18. My attorney told me that by pleading guilty and cooperating, he would work with
    Adam Hobson and the U.S. Attorney's Office to secure immigration relief,
    including the possibility of an S or U visa.

19. My attorney explained that to secure an S or U visa, the government would
    provide a 5K1 letter based on my cooperation.

20. I fully cooperated and received the 5K1 letter, which further confirmed that my
    situation would be addressed.

21. My attorney repeatedly told me that I would receive no additional jail time and would be released into the community.

22. Shortly before I turned myself in, my attorney told me that once released I would need to comply with parole supervision for approximately three years, and I was provided the name of a parole officer.

23. These statements further confirmed to me that deportation was not an issue in my case.

24. My attorney, Bradley Henry, further reassured me by telling me about another case he handled involving a woman who faced more serious charges than mine. He told me that after her criminal case was completed, immigration authorities did not take action against her. He presented this example to reassure me that immigration consequences would not be an issue in my case, which further reinforced my belief that pleading guilty would not result in deportation.

25. Before pleading guilty, I told my attorney that I suffer from lupus, and that it was medically critical that I continue treatment with my New York rheumatologist, Dr. Lans.

26. I also told my attorney that my then-fiancé, now wife, was pregnant, and that it was important that I be present for her and our family.

27. I also cared for my elderly mother, who became a widow following the death of my father in November 2017, prior to my guilty plea. My support and presence were critical to her well-being during this period.

28. My attorney never advised me that pleading guilty would permanently remove me from the United States and my family.

29. I knew the charges were not true, and I was aware that a friend represented by Bradley Henry on similar charges went to trial and won.

30. In 2020, during COVID-19 incarceration, my health worsened. My attorney told me he would seek compassionate release so I could see my doctor.

31. The Court granted compassionate release, and the U.S. Attorney did not oppose to me being released to see my doctor to address my health concerns.

32. I was told that I was being released to see my doctor.

33. Instead, on the day of my release, I was taken directly into ICE custody without warning.

34. While in ICE detention, I was given incorrect medication, passed out, and was hospitalized.

35. I was placed in solitary confinement without phone access and could not contact my family or attorney.

36. This was the last time Bradley Henry ever responded to me and my family.

37. I was ultimately deported.

38. Even in 2020, I did not understand that deportation was mandatory. I believed it was happening because I was in ICE custody due to Bradley Henry's misrepresentations.

39. I only learned later, through independent legal research, that my plea triggered mandatory deportation as a matter of law.

40. Had I known that pleading guilty would result in mandatory deportation, I would not have pled guilty and would have gone to trial, even if it meant risking a longer sentence.

41. I have filed a complaint with the bar association against Bradley Henry regarding his handling of my criminal and immigration matters.

42. Since deportation, I have been living in a foreign country where I do not know the language or anyone, and I have been separated from my entire family.

43. My wife has been forced to raise our twins alone, who have significant mental health needs, resulting in severe financial, emotional, and psychological hardship.

44. I suffer from PTSD, severe anxiety, and lupus, which cannot be properly treated since deportation.

45. All statements in this affidavit are true and correct to the best of my knowledge.

Executed on January 15, 2026

George Graham

**AFFIDAVIT OF JEROME FLOYD**

I, Jerome Floyd, pursuant to 28 U.S.C. § 1746 declare under penalty of perjury as follows:

1. I have been personally acquainted with George Graham for over 30 years.

2. In 2014 I was represented by Bradley Henry in a federal criminal case involving charges similar to those faced by George Graham.

3. I proceeded to trial rather than plead guilty.

4. After trial, my case was dismissed, and I was not convicted of the charges.

5. Because of my experience with Mr. Henry and the outcome of my case, I recommended Mr. Henry to George Graham when George was facing his federal charges.

6. I informed George Graham that I had been represented by Mr. Henry on similar charges, that I went to trial, and that my case was dismissed.

7. Based on my experience, I believed that proceeding to trial was a viable and reasonable option in cases like George Graham's.

8. To my knowledge, George Graham ultimately pled guilty rather than proceeding to trial.

9. Since George Graham's granted compassionate release to see his doctor in 2020, Bradley Henry has not responded to any of my emails or phone calls.

10. Had I known that pleading guilty would result in mandatory deportation, I would have strongly advised George Graham not to plead guilty and instead to proceed to trial.

1

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2026

Jerome Floyd

**AFFIDAVIT OF AMANDA GRAHAM**

I, Amanda Graham, pursuant to 28 U.S.C. § 1746 declare under penalty of perjury as follows:

1. I am the wife of George Graham, Petitioner in United States v. George Graham, Case No. 17-CR-663, in the Southern District of New York.

2. I have personal knowledge of the circumstances surrounding my husband's criminal case, his plea, and the impact of his deportation on our family.

3. At the time my husband was deciding whether to plead guilty, I never received any advice from him or from his attorney, Bradley Henry, regarding deportation.

4. At no time did Mr. Henry or anyone else inform me that pleading guilty would trigger mandatory deportation.

5. George was granted compassionate release to see his doctor in 2020 and I anticipated him to be released back into the community and I was shocked at him being taking into ICE custody.

6. Immediately after that I began to contact Bradley Henry via emails and phone calls and he has yet to respond.

7. I relied on my husband and his attorney's representations that his cooperation and plea would secure his release and address any immigration concerns.

8. I was pregnant at the time and it was critical for him to be present during the pregnancy and afterward.

9. Since his deportation in 2020, I have been forced to care for our twins alone, which has caused severe financial hardship, emotional stress, and mental strain.

1

10. The twins have significant mental health needs, which I have been managing alone since my husband's deportation.

11. The separation from my husband and the additional responsibilities have been severely traumatic for our family.

12. I make this affidavit to support my husband's motion to vacate his guilty plea and conviction pursuant to 28 U.S.C. § 2255.

13. All statements in this affidavit are true and correct to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 15, 2026

Amanda Graham

**AFFIDAVIT OF ANDREW GRAHAM**

I, Andrew Graham, pursuant to 28 U.S.C. § 1746 declare under penalty of perjury as follows:

1. I am the brother of George Graham, Petitioner in United States v. George Graham, Case No. 17-CR-663, in the Southern District of New York.

2. During the time my brother was deciding whether to plead guilty in his criminal case, he and I discussed his options and desire to fight the charges.

3. My brother asked me to provide his criminal defense attorney, Bradley Henry, with contact information for his immigration attorney at the time.

4. At Mr. Henry's request, I provided the contact information for Petitioner's immigration attorneys at Spar & Bernstein.

5. I understood that Mr. Henry intended to confer with these immigration attorneys and the U.S. Attorney, Adam Hobson, to work toward immigration relief for my brother based on cooperation, including the possibility of an S visa or U visa.

6. I understood from these discussions that the plan was focused on securing a 5K1 letter and possible visa benefits; it was never about avoiding deportation because no one informed us that deportation was mandatory.

7. At no time was I told, nor did I ever understand, that pleading guilty would automatically or mandatorily result in my brother's deportation.

8. I relied on these representations and on Mr. Henry's assurances that my brother's cooperation and plea would secure release and potential immigration relief.

1

9. In 2020 I was informed by my brother that his lupus had worsened and that his attorney Bradley Henry would be filing for relief in order to see his doctor due to the severity of his condition and the COVID 19 pandemic.

10. On the day of his compassionate release to his doctor I drove to Pennsylvania where he was being released from and was surprised to find out that he was instead taken into ICE custody.

11. I began to contact Bradley Henry to find out more Information on why wasn't he released to see his doctor and he never responded.

12. I was unable to find out from Bradley why he never was released to see his doctor but instead taken into ICE custody and later deported.

13. Had I known that pleading guilty would trigger mandatory deportation, I would have urged my brother to refuse the plea and proceed to trial, even at the risk of longer incarceration.

14. All statements in this affidavit are true and correct to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 15, 2026

Andrew Graham

2

CERTIFICATE OF WORD COUNT

I, George Graham, certify that the foregoing Memorandum of Law in Support of
Petitioner's Motion to Vacate Guilty Plea and Conviction pursuant to 28 U.S.C. § 2255
contains 4,267 words, as counted by the word-processing program used to prepare this
document, excluding the parts exempted by the Local Rules.

Dated: January 15, 2026

s/ George Graham

George Graham, Pro Se

CERTIFICATE OF SERVICE

I hereby certify that on January 15,  2026, I caused a true and correct copy of the foregoing Motion to Vacate Guilty Plea and Conviction, together with all exhibits and affidavits, to be served via mail on:


United States Attorney's Office

Southern District of New York

1 St. Andrew's Plaza

New York, NY 10007


Executed this 15th day of January, 2026.

George Graham, Pro Se

Clerk of Court

United States District Court

Southern District of New York

RECEIVED
SDNY PRO SE OFFICE

2026 JAN 23  AM 10: 48

Re: United States v. George Graham

Case No. 17-CR-663


Dear Clerk of Court:


I am writing as a pro se litigant to submit the enclosed filings for docketing in the above-referenced case.


I am going to attach the following documents in separate emails:


1.  Notice of Motion to Vacate Guilty Plea and Conviction Pursuant to 28 U.S.C. § 2255;

2.  Memorandum of Law in Support of Motion to Vacate Guilty Plea and Conviction Pursuant to 28 U.S.C. § 2255;

3.  Affidavit of George Graham;

4.  Affidavit of Jerome Floyd;

5.  Affidavit of Amanda Graham;

6.  Affidavit of Andrew Graham; and

7.  Certificate of Service.

These materials are submitted for filing and consideration by the Court. Kindly docket the enclosed documents accordingly.

If any additional information or formatting is required, please advise.

Thank you for your time and assistance.

Respectfully submitted,

George Graham

Defendant–Petitioner, Pro Se

**EXPRESS EASY** **XED** **DHL**

2026-01-15 MyDHL API 1.0 / "GLS certified label"

From: GEORGE GRANAM
GEORGE GRANAM
GOSPEL LIGHT ROAD
WEIJA
ACCRA
GHANA

Origin: **ACC**

Contact:

To: PROSE INTAKE UNIT
PROSE INTAKE UNIT
500 PEARL STREET,RM 200/205/230

**10007 NEW YORK**
**UNITED STATES OF AMERICA**

**GH02 US-ZYP-ZY4**

Day    Time

**ADI**

Pce/Shpt Weight    Piece
**0.5 kg**    **1 / 1**

Content : DOCUMENTS - GENERAL BUSINESS




WAYBILL 73 4179 3550

(2L)US10007+60000000

Ref Code:


(J) JD01 4600 0124 4106 0533

---

**EXPRESS EASY** **XED** **DHL**

2026-01-15 DCFS 4.0 / "0 - 1403"

**10007 NEW YORK, UNITED STATES OF AMERICA**

Origin: **ACC**

**GH02 US-ZYP-ZY4**

Bar    Time

**ADI - UNK**

Ref Code 73417936509H202601151

Date: 2026-01-15    Pce/Shpt Weight 0.5 KG    Piece 1/1

Content Description
DOCUMENTS - GENERAL BUSINESS


WAYBILL 73 4179 3550


(2L)US10007+60000050


(J) JD01 4600 0124 4106 0533